IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


PAMELA JANE SORNSON,

                Plaintiff,

                                        No. 3:12-cv-190-HZ

                                        OPINION & ORDER

     v.

OREGON COMMISSION ON CHILDREN,
a commission created and funded by the
Oregon legislature,
MICKEY LANSING, in her official capacity as
Executive Director of the Oregon Commission on
Children and Families and in her individual capacity,
MARION COUNTY, a political subdivision of the
state of Oregon, and
CASA OF MARION COUNTY, INC.,
an Oregon nonprofit corporation,

                Defendants.

Linda L. Marshall
PMB 408
3 Monroe Parkway, Suite P
Lake Oswego, OR 97035

        Attorney for Plaintiff

1 - OPINION & ORDER

Marc Abrams
OREGON DEPARTMENT OF JUSTICE
1515 SW Fifth Avenue, Suite 410
Portland, OR 97201

      Attorney for Oregon Commission
      on Children and Families and
      Mickey Lansing

Kirstin E. Lurtz
MARION COUNTY LEGAL COUNSEL
555 Court Street, N.E.
P.O. Box 14500
Salem, Or 97309

      Attorney for Marion County

Brian K Weeks
John M Kreutzer
SMITH FREED & EBERHARD, PC
111 SW Fifth Avenue, Suite 4300
Portland, OR 97204

      Attorneys for CASA of Marion County, Inc.

HERNANDEZ, District Judge:

      Now before me is the Partial Motion to Dismiss (doc. #10) filed by the Oregon

Commission on Children and Families ("OCCF") and Mickey Lansing ("Lansing") (collectively,

"Defendants") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule").  Also

before me is the Motion to Dismiss (doc. #15) filed by Marion County (the "County") pursuant

to Rule 12(b)(6).[1]  The motions seek to dismiss claims brought by Pamela Jane Sornson

("Plaintiff") which allege violations of her First Amendment right to free speech pursuant to 42

U.S.C. § 1983 ("§ 1983") and violations of Oregon's whistleblowing statutes ORS 659A.199 and

---

[1] The County did not file a reply brief in support of its Motion to Dismiss.

2 - OPINION & ORDER

ORS 659A.203.[2]  For the reasons discussed below, Defendants' Partial Motion to Dismiss is

GRANTED and the County's Motion to Dismiss is GRANTED.

## BACKGROUND

The Complaint alleges the following facts, which I assume to be true for purposes of the

Partial Motion to Dismiss and the Motion to Dismiss:

From July 1, 2005, to March 15, 2011, Plaintiff was employed by the Court Appointed

Special Advocate of Marion County, Inc. ("CASA") as its Executive Director.  Compl., ¶ 11.

CASA was under contract with the County and received state and federal funding through the

County.  Id., ¶ 10.  In 2010, Plaintiff discovered misallocations of federal and state funds that had

been appropriated for programs related to CASA.  Id., ¶ 13.  After discovering the misallocation

of funds, Plaintiff met with members of the Oregon legislature to voice her concerns.  Id., ¶ 15.

Plaintiff alleges that Defendants attempted to chill her speech by falsely accusing her of

forging documents and of mismanaging CASA.  Id., ¶ 16.  Plaintiff further alleges that the

County attempted to chill her speech by sending a letter to the Board of Directors of CASA

questioning her activities with the Oregon legislature.  Id., ¶ 17.  Plaintiff also alleges that

"Lansing, OCCF, and/or Marion County requested that CASA . . . prohibit [her] continued

advocacy concerning CASA . . . ."  Id., ¶ 18.  On March 9, 2011, the Board of Directors of

CASA directed Plaintiff to stop communicating with members of the Oregon legislature

concerning CASA matters, and on March 15, 2011, CASA terminated Plaintiff.  Id., ¶ 21.

## STANDARD

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2] Plaintiff does not specifically allege which claim she brings against which defendant.

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

## DISCUSSION

### I. Defendants' Partial Motion to Dismiss

I turn first to Defendants' Partial Motion to Dismiss.

### A. Claims Against OCCF Pursuant to 42 U.S.C. § 1983

Defendants contend Plaintiff is not entitled to monetary damages under Will v. Michigan Department of State Police, 491 U.S. 58, 64 (1989), where the Supreme Court held that a State is not a "person" within the meaning of § 1983.  Plaintiff responds that OCCF is not an "arm of the state" and is therefore subject to suits brought under § 1983.

Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The Eleventh Amendment, however, provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).  "Immunity from suit under the Eleventh Amendment further extends to suits by citizens against their own state and certain actions against state agencies and state instrumentalities."  Holz v. Nenana City

Public Sch. Dist., 347 F.3d 1176, 1180 (9th Cir. 2003) (citations omitted).  The Supreme Court

has "consistently refused to construe the [Eleventh] Amendment to afford protection to political

subdivisions such as counties and municipalities, even though such entities exercise a slice of

state power." Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401

(1979) (internal quotation marks and citations omitted).

The decision to extend sovereign immunity to a public entity turns on whether the entity

"is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity,

or is instead to be treated as a municipal corporation or other political subdivision to which the

Eleventh Amendment does not extend." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429

U.S. 274, 280 (1977).  Under the "arm of the state" doctrine, a state agency is immune from suit

under the Eleventh Amendment if the state is the "real, substantial party in interest" and is

empowered to invoke its sovereign immunity from suit, even though individual officials or state

entities are nominal defendants.  Durning v. Citibank, N.A., 950 F.2d 1419, 1423 (9th Cir. 1991)

(internal quotation and citations omitted).  Sovereign immunity cloaks the state agent or agency

because, if the plaintiff prevails, such a judgment "would have the same effect as if it were

rendered directly against the State for the amount specified in the complaint."  Id. (internal

quotation and citations omitted).  In the Ninth Circuit, courts employ the following five-factor

test (hereinafter, the "Mitchell Test" or "Mitchell Factors") to determine whether an entity is an

arm of the state:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether
> the entity performs central governmental functions, [3] whether the entity may sue
> or be sued, [4] whether the entity has the power to take property in its own name
> or only the name of the state, and [5] the corporate status of the entity.

Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 250-51 (9th Cir. 1992) (quoting the

seminal case Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1989)).

When analyzing whether an entity is an arm of the state under the <u>Mitchell</u> Factors, a court looks to the way state law treats the entity.[3]  <u>See, e.g.</u>, <u>ITSI T.V. Prods., Inc. v. Agric. Ass'ns</u>, 3 F.3d 1289, 1292 (9th Cir. 1993) (quoting <u>Mitchell</u>, 861 F.2d at 201).

Because a state can waive its sovereign immunity, the Ninth Circuit treats Eleventh Amendment immunity as an affirmative defense rather than a jurisdictional bar.  <u>See</u> <u>Miles v. Cal.</u>, 320 F.3d 986, 988 (9th Cir. 2003); <u>Hill v. Blind Indus. and Serv. of Md.</u>, 179 F.3d 754, 762 (9th Cir. 1999).  Accordingly, Eleventh Amendment immunity "must be proved by the party that asserts it and would benefit from its acceptance."  <u>ITSI</u>, 3 F.3d at 1291.

### 1. Whether a Money Judgment Would be Satisfied Out of State Funds

"The first prong of the <u>Mitchell</u> test–whether a money judgment would be satisfied out of state funds–is the predominant factor.  This factor is given additional weight because the impetus of the Eleventh Amendment is the prevention of federal-court judgments that must be paid out of a state's treasury . . . ."  <u>Beentjes v. Placer Cnty. Air Pollution Control Dist.</u>, 397 F.3d 775, 778 (9th Cir. 2005) (quotation marks and citations omitted).  The question is "whether a judgment against the defendant entity under the terms of the complaint would have to be satisfied out of the limited resources of the entity itself or whether the state treasury would also be legally pledged to satisfy the obligation."  <u>Durning</u>, 950 F.2d at 1424; <u>Eason v. Clark Cnty. Sch. Dist.</u>, 303 F.3d 1137, 1142 (9th Cir. 2002) ("[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant.") (Citation omitted).

---

[3] Plaintiff asserts that Defendants "provide no factual context to apply the <u>Mitchell</u> factors in order to determine whether the OCCF is an 'arm of the state'" and provides "no evidence" to support its conclusion that OCCF is an "arm of the state."  Resp., pp. 6-7 Plaintiff's assertion fails because a court may look to the way state law treats the entity –not only the "factual context" or other factual evidence–when applying the <u>Mitchell</u> Factors.

6 - OPINION & ORDER

Plaintiff contends that a judgment in this case would be satisfied from an independent account (the "OCCF Account"), which she asserts is separate from the General Fund. I disagree.

Under ORS 417.710, OCCF carries out its duties and functions through the "combination of local, state and federal funding, including the leveraging of public and private funds".[4] ORS 417.710(4). All federal moneys collected or received by OCCF, however, must be "accepted and transferred or expended" in accordance with the "terms and conditions as are prescribed by the federal government." ORS 417.735(b). Similarly, all non-federal "moneys and other property accepted by [OCCF]" must be "transferred, expended or used" in accordance with the "terms and conditions . . . prescribed by the donor in a manner consistent with applicable law." ORS 417.735(c).

ORS 417.733 sets forth what monies may be deposited into the OCCF Account and for what purposes the monies in the OCCF Account may be appropriated, stating:

> The State Commission on Children and Families Account is established separate and distinct from the General Fund. All moneys received by the State Commission on Children and Families, other than appropriations from the General Fund, shall be deposited into the account and are continuously appropriated to the commission to carry out the duties, functions and powers of the commission.

ORS 417.733.

A careful reading of the Oregon statutes simply does not support Plaintiff's position that monies within the OCCF Account may be used to satisfy money judgments against OCCF. Nothing in the statutory language demonstrates that the satisfaction of money judgments against OCCF constitutes "duties, functions and powers" of OCCF or otherwise establishes that monies allocated to the OCCF Account may be used to satisfy money judgments against OCCF.

---

[4] The parties do not dispute that OCCF is allocated monies from the State's General Fund. See ORS 417.733; 417.735(13)(a), 419A.170(10).

In addition, none of the cases on which Plaintiff relies supports her proposition. For example, in Belanger, 963 F.2d at 251-52, the Ninth Circuit concluded that the first Mitchell Factor weighed in favor of defendant because any judgment against defendant would be satisfied out of state funds. Plaintiff's reliance on Belanger actually supports Defendants' position and is therefore inapposite.

With respect to Holz, 347 F.3d at 1182, the Ninth Circuit concluded that the state was not legally obligated to pay money judgments rendered against the Nenana City Public School District. In that case, however, Alaska law "explicitly provide[d] that the state [was] not liable for the School District's debts." Id. Here, the authority on which Plaintiff relies does not expressly provide that the State is free from having to satisfy money judgments rendered against OCCF. Plaintiff's reliance on Holz therefore lacks merit.

With regard to Eason, 303 F.3d at 1142-43, the Ninth Circuit held that Nevada's Clark County School District was not an "arm of the state". There, the Ninth Circuit found that under the unique structure of the Nevada school system, "the state guarantee[d] only a minimum amount of per pupil spending, not a maximum, and because school districts [could] generate funds in addition to those provided by the state, it [was] not necessarily true that an amount withdrawn from a school district's account in order to pay a judgment [would] be replaced with state money." Id. at 1142. Suffice it to say, the unique statutory scheme applicable to the Nevada school system, including the minimum amount of money the state was required to spend per pupil and the additional means through which the Nevada school districts could generate funds, is simply not present in any of the statutes cited by Plaintiff. Accordingly, I am not persuaded by Plaintiff's reliance on Eason.

It is also worth noting that the OCCF is represented by the Attorney General, Ellen

Rosenblum, and Senior Assistant Attorney General Marc Abrams.  ORS 278.120 provides that

"[t]he Attorney General shall defend all lawsuits after the [Oregon Department of Administrative

Services ("ODAS")] has determined that a reasonable settlement cannot be achieved . . . [and

that ODAS is to] pay from the Special Liability Revolving Fund authorized in ORS 278.150 or

the Insurance Fund the amount of any judgment . . . ."  ORS 278.120(1).  Oregon Administrative

Rule ("OAR") 125-150-0000 provides that the Risk Management Division of the ODAS

"administers the Liability Fund established by ORS 278.100 to cover the tort liability of the

state".  OAR 125-150-0000(1).  The language of the above statutes and rules further supports my

conclusion that the State will be required to pay any money judgment against OCCF.

For the reasons discussed above, I conclude that the first Mitchell Factor weighs in favor

of finding that OCCF is an arm of the State and that the State is the "real, substantial party in

interest".  See Beentjes, 397 F.3d at 781.

## 2. Whether the Entity Performs Central Governmental Functions

The second Mitchell Factor considers whether the entity in question addresses "a matter

of statewide rather than local or municipal concern, and the extent to which the state exercises

centralized governmental control over the entity."  Beentjes, 397 F.3d at 782 (internal quotation

and citation omitted).  Plaintiff relies heavily on Beentjes for the proposition that the OCCF does

not perform central governmental functions.  Resp., p. 10.  Plaintiff theorizes that OCCF fails to

meet the second Mitchell Factor because it defines itself as a hybrid agency, citing OAR 423-

001-0006(21).  Plaintiff also theorizes that OCCF is a "special government body" and not a part

of the executive department under ORS 174.117(f) and (g) because it is composed of members of

both the executive and legislative departments.  Plaintiff contends that OCCF is not a centralized

authority because "[r]esponsibility for services to children and families is spread among many state agencies, counties, and local entities"; counties control the expenditure of funds; and local commissions are responsible for setting policy, prioritizing activities, and overseeing implementation of programs.  Resp., p. 12.  Finally, Plaintiff contends that OCCF only allocates funds and is simply in the business of encouraging innovative projects, compiling information, creating reporting systems, collecting data, making grants, and providing technical assistance. She asserts that although OCCF is authorized to set statewide "guidelines," local commissions distribute the funds and supervise services.

Plaintiff's arguments fail.  In Beentjes, the Placer County Air Pollution Control District ("the District") had many more local functions, more discretionary power, and more autonomy than OCCF has here.  See Beentjes, 397 F.3d at 783.  There, the District was "entrusted with a variety of discretionary powers and ha[d] substantial autonomy in carrying out [its] duties[,] . . . [including] adopt[ing its] own rules and budgets, establish[ing] [its] own regulatory system[] for reducing air contaminants, issu[ing] abatement orders, . . . bring[ing] actions to assess civil penalties against individuals who violate[d] air pollution regulations[, and could] . . . delegate any functions related to implementing transportation control measures to any local agency."  Id. The District also had "discretion to promulgate and enforce air quality standards that [were] more stringent than state requirements [and] . . . discretion to balance statewide environmental concerns with potential local economic consequences by granting variances below state standards."  Id.  In light of the "decentralized structure" of air quality enforcement in California, as well as the "degree of autonomy" enjoyed by the District, the Ninth Circuit found that the District had been granted "wide latitude to conduct [its] affairs as [it saw] fit, so long as [it]

maintain[ed] standards at least as stringent as those adopted by the State." Id. (quotation marks omitted).

OCCF does not have a similar "decentralized structure" or the "degree of autonomy" present in Beentjes. Unlike the District in Beentjes, Plaintiff cites no statute giving OCCF the ability to adopt its own rules, establish its own regulatory system, issue abatement orders, bring actions to assess civil penalties, promulgate and enforce child service or family standards that are more stringent than state requirements, or balance statewide child and family concerns with potential local consequences by granting variances below state standards. In fact, OCCF is prohibited from providing any "direct services" whatsoever. ORS 417.735(1). Because the District's local functions, discretionary power, and autonomy in Beentjes go well beyond those explicitly bestowed to OCCF, Plaintiff's reliance on Beentjes is unavailing.[5]

Plaintiff's argument that OCCF is a "hybrid agency" and a "special government body" based on OAR 423-001-006(21) and the composition of its members is also unavailing. Resp., p. 11. Contrary to Plaintiff's argument, OAR 423-001-006(21) does not define OCCF as a "hybrid agency". Rather, OAR 423-001-006(21) simply clarifies that the term "Oregon Commission on Children and Families" means "the totality of the service system described in [ORS 417.705 to 417.797 and ORS 419A.170]", and includes "the State Commission on Children and Families (417.730), the State Commission-appointed director and staff (417.735), the local commissions on children and families (417.760) and specific program areas." OAR 423-001-006(21). Plaintiff reads too much into this language as defining OCCF as a "hybrid agency" which does not perform central governmental functions. Additionally, the fact that OCCF is composed of members from different organizations and branches, including a

---

[5] Plaintiff also cites a number of other cases. Plaintiff, however, does not articulate in any way– and I do not find–how those cases apply to the specific facts to this case or otherwise support her position that OCCF does not performs central governmental functions.

"nonvoting" "advisory" member of the Senate" and a "nonvoting" "advisory" member of the

House of Representatives, does not place OCCF outside the executive branch or make it a

"special government body". <u>See</u> ORS 417.730(1)-(5). In fact, Plaintiff does not cite any

authority–and I find none–standing for the proposition that the composition of OCCF's

membership in this instance makes it a "hybrid agency" or otherwise establishes OCCF as an

entity which does not perform central governmental functions.

Additionally, I disagree with Plaintiff's assertion that OCCF is a "special government

body". ORS 174.117 provides that a "special government body" means "[a]n intergovernmental

body formed by two or more public bodies" or "[a]ny entity that is created by statute, ordinance

or resolution that is not part of state government or local government." ORS 174.117(1)(f)-(g).

There is simply no authority expressly providing that OCCF is an intergovernmental body

formed by two or more public bodies or is an entity that is not part of the state or local

government.

Based on Oregon's statutory scheme, I find that OCCF performs central governmental

functions. Pursuant to ORS 417.735, OCCF is limited to "promot[ing] the wellness of children

and families at the <u>state level</u> and [to] act in accordance with the principles, characteristics and

values identified in ORS 417.708 to 417.725". ORS 417.735(1) (emphasis added). ORS

417.710 provides that the purpose of ORS 417.708 to 417.800 is to set "<u>statewide</u> guidelines for

the planning, coordination and delivery of services for children and families in conjunction with

other state agencies and other planning bodies" and to provide "a process for comprehensive

local planning for services for children and families to provide local services that are <u>consistent</u>

<u>with statewide guidelines</u> . . . ."). ORS 417.710(1), (3) (emphasis added). In addition, ORS

417.715 provides that OCCF is part of a "<u>statewide system of services</u> that is preventive,

integrated in local communities and accessible to children and families and that focuses on promoting the wellness of Oregon's children." ORS 417.715(1) (emphasis added); see also ORS 417.715(2)(a)-(b) (the system of services has a "commitment to children that ranks them as Oregon's first priority" and a "commitment to reducing the number of Oregon's children and families living in poverty") (emphasis added). The fact that other state agencies, counties, and local entities are also responsible for services to children and families does not necessarily establish that OCCF does not perform central governmental functions.

In light of the above, I conclude that the second Mitchell Factor weighs in favor of finding that OCCF is an arm of the state.

### 3. Power to Sue or Be Sued

The third Mitchell Factor considers whether OCCF may sue or be sued. Mitchell, 861 F.2d at 201. Plaintiff contends that because OCCF may sue and be sued in its own name pursuant to ORS 182.466(1), OCCF satisfies the third Mitchell Factor. Plaintiff's reliance on ORS 182.466 is misplaced. ORS 182.466 states that "a board may . . . [s]ue and be sued in its own name", and defines "board" as a "semi-independent state agency listed in ORS 182.454." ORS 182.466(1); see also ORS 182.456. ORS 182.454, in turn, lists eleven agencies which qualify as "semi-independent state agencies". OCCF is not listed as one of the eleven agencies. Based on the plain language of the statute, ORS 182.466 clearly does not apply to OCCF, let alone establish that OCCF may sue or be sued. Accordingly, the third Mitchell Factor does not weigh in Plaintiff's favor.

### 4. Power to Take Property in Its Name

The fourth Mitchell Factor considers whether OCCF has the power to take property in its own name or only in the name of the state. Mitchell, 861 F.2d at 201. Plaintiff argues that

OCCF is not required to acquire property in the name of the state and that property is acquired in

the name of the responsible county, citing OAR 423-010-0036(1).

> OAR 423-010-0036 provides:
>
> Equipment and other capital expenditure items, with a value of over $5,000, purchased by a county or a provider with county funds allocated from the Agency will be the property of the county and subject to county policies on capital expenditures and equipment.   When activity funding ends or an activity is terminated for any reason, the equipment purchased with funds allocated under the Act will revert to the county, except that, on the recommendation of the Local Commission, the Board of County Commissioners may allow the former provider to retain the equipment if it will continue to be used effectively in the provision of services to children, youth or families.

OAR 423-010-0036(1).

The administrative rule on which Plaintiff relies does not establish that OCCF acquires

property in the name of the counties.  OAR 423-010-0036 merely provides that capital

expenditures and equipment purchased by a county or a provider using county funds is property

of the county.  It does not necessarily follow from this language that OCCF has the power to take

property in its own name through the counties or otherwise establish that OCCF has the power to

take property in its own name.  Accordingly, the fourth Mitchell Factor does not weigh in

Plaintiff's favor.

### 5. Corporate Status of OCCF

The fifth and last Mitchell Factor considers "the extent to which . . . an entity [is] distinct

from the state."  Beentjes, 397 F.3d at 784-85 (citing Holz, 347 F.3d at 1188).  Plaintiff argues

that although the Governor of the State of Oregon ("Governor") appoints some members of

OCCF's members, nothing shows that those members serve at the pleasure of the Governor or

that the Governor has the authority to remove them.  In addition, Plaintiff argues that although

the Governor selects the chairperson of OCCF, there is no authority that the chairperson serves at

the pleasure of the Governor or that the Governor has authority to remove the chairperson. Similarly, Plaintiff asserts that although OCCF appoints the executive director, the executive director reports to OCCF and manages its staff.

Plaintiff's arguments simply do not establish that OCCF is distinct from the State or that OCCF is a corporate body separate from the State. In addition, none of the cases on which Plaintiff relies supports her proposition that OCCF is distinct from the State. For example, Alaska Cargo Transport, Inc. v. Alaska Railroad Corp., 5 F.3d 378, 382 (9th Cir. 1993) goes against Plaintiff's position. In that case, the Ninth Circuit concluded that the fifth Mitchell Factor weighed in favor of finding Alaska Railroad Corp. ("ARRC") was an arm of the state. Id. at 382. The Ninth Circuit reasoned that although ARRC "ha[d] a separate corporate status, it [was] far from autonomous". In coming to that determination, the Ninth Circuit relied on the fact that "the governor appoint[ed] all seven of ARRC's board members", that "two state officials, the Commissioner of Commerce and Economic Development and the Commissioner of Transportation, [sat] on the board", and that the ARRC could not "issue bonds, expand its rail lines, or sign long-term leases" or "issue [ ] shares of stock, pay dividends, make private distributions of assets, make loans to board members or employees, or engage in business for private benefit" without legislative approval." Id. (citations omitted).

Similar to Alaska Cargo, the membership of OCCF demonstrates that it is not autonomous. The membership of OCCF is composed of a number of State employees, including the Director of Human Services, the Superintendent of Public Instruction, the Director of the Employment Department, and the Director of the Oregon Health Authority. ORS 417.730(1)-(2). In addition, like Alaska Cargo, membership at OCCF also includes a number of members appointed by the Governor. See Id. (the Governor appoints twelve members of OCCF).

Although the membership of OCCF includes one member appointed by the President of the Senate and one member appointed by the Speaker of the House of Representatives, both those members are "nonvoting" and are simply "advisory member[s]".  ORS 417.730(1)(e)-(f). Moreover, like Alaska Cargo, there is no indication that OCCF may issue bonds, expand the services provided to children or families, sign leases, issue shares of stock, pay dividends, make private distributions of assets, make loans to board members or employees, or engage in business for private benefit without legislative approval.  Based on the above, Alaska Cargo does not support Plaintiff's position.  Rather, it supports the conclusion that OCCF is not distinct from the State.

Plaintiff also relies on Durning, 950 F.2d at 1427 for the proposition that OCCF is distinct from the State.  Plaintiff's reliance on Durning is misplaced.  In that case, the Ninth Circuit held that the Wyoming Community Development Authority (the "Authority") was its "own independent corporate identity."  Id. at 1427.  The Ninth Circuit relied on the fact that Wyoming statutes explicitly provided that the Authority was "a body corporate operating as a state instrumentality operated solely for the public benefit".  Id. (citing Wyo. Stat. § 9-7-104(a)). The Ninth Circuit also relied on the fact that the "Official Statement, a disclosure document equivalent in most respects to a stock offering's prospectus[,]" defined the Authority as a "separate entity in contradistinction to the 'State' and which expressly distinguishe[d] the former from the latter."  Durning, 950 F.2d at 1426 (citations omitted).  Unlike Durning, there is no Oregon statute explicitly establishing OCCF as a "body corporate" and there are no allegations or evidence explicitly defining OCCF as a separate entity apart from the State.  Accordingly, the Ninth Circuit's decision in Durning is inapposite.  Based on the lack of any authority expressly

stating that OCCF is a separate corporate body or a separate entity, I conclude that the fifth

Mitchell Factor does not support Plaintiff's position.

When balancing all five of the Mitchell Factors, I conclude that OCCF is an

instrumentality of the State entitled to sovereign immunity under the Eleventh Amendment.

Accordingly, Defendants' motion to dismiss Plaintiff's first and second claims for relief against

OCCF is granted.[6]

### B. State Law Claims Against OCCF and Lansing

Plaintiff's third and fourth claims for relief allege that Defendants violated Oregon's

whistleblowing statutes, namely ORS 659A.199 and 659A.203, respectively.  Defendants assert

Plaintiff's whistleblowing claims brought pursuant to ORS 659A.199 and 659A.203 lack merit

because neither OCCF nor Lansing, the Executive Director of OCCF, ever employed Plaintiff.[7]

Defendants assert that under ORS 659A.199 and 659A.203, the definition of "employer" means

Plaintiff must have actually been employed by Defendants.  Defendants argue that because

---

[6] Defendants concede that Plaintiff's First Amendment claims against Lansing–her first and
second claims for relief–survive their 12(b)(6) motion to dismiss.  See Mem. in Supp., p. 2.
Accordingly, Plaintiff's first and second claims for relief against Lansing are not dismissed.

[7] Defendants raise for the first time in their reply that Plaintiff may not bring suit against OCCF
on its state law claims because the State has not expressly waived its immunity to such actions.
Defendants also assert that Plaintiff failed to provide timely notice of her ORS 659A.199 claim,
proffering as evidence Plaintiff's July 6, 2011, notice of claim.  Defendants concede that I may
not consider Plaintiff's July 6, 2011, notice of claim in their Rule 12(b)(6) motion because it is
outside the four corners of the Complaint.  To remedy this problem, Defendants request that I
"treat" their original Rule 12(b)(6) motion as a Rule 12(b)(1), which permits dismissal of claims
for lack of subject-matter jurisdiction.  Reply, p. 11.  Defendants' argument that the State has not
expressly waived its immunity and their request that I construe their 12(b)(6) motion as a
12(b)(1) motion are improper because they were raised for the first time in Defendants' reply and
because motions may not be raised in responsive briefings under Local Rule 7(b).  See, e.g.,
Turtle Island Restoration Network v. U.S. Dep't of Commerce, 672 F.3d 1160, 1166 n.8 (9th Cir.
2012) ("[A]rguments raised for the first time in a reply brief are waived.") (Citations and
quotation marks omitted); see also Local Rule 7(b) ("Motions may not be combined with any
response, reply, or other pleading.").  I therefore decline to address Defendants' arguments and
decline to consider the July 6, 2011, notice of claim.

Plaintiff was only employed by CASA, a non-profit corporation that contracted with the County, Defendants may not be liable under ORS 659A.199 or 659A.203. Compl., ¶¶ 6, 9-11, 22.

Plaintiff concedes that she was never employed by OCCF. Id., ¶¶ 8, 10, 11. She, however, urges this court to adopt her broad definition of the term "employee", which she asserts does not require her to have been employed by OCCF. Plaintiff argues that the term "public employer" includes "[t]he state or any agency of or political subdivision in the state" and includes "[a]ny person authorized to act on behalf of the state, or any agency of or political subdivision in the state, with respect to control, management or supervision of any employee." ORS 659A.200(3)(a)-(b). Plaintiff maintains that because OCCF qualifies as "any person authorized to act on behalf of the state, it is an "employer" for the purpose of ORS 659A.203. Compl., ¶¶ 10, 11, 19, 53.

I disagree with Plaintiff's arguments. ORS 659A.199 provides as follows:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

ORS 659A.199(1).

ORS 659A.203 states as follows:

> [I]t is an unlawful employment practice for any public employer to . . . [p]rohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of . . . [a] violation of any federal or state law, rule or regulation by the state, agency or political subdivision; . . . [or m]ismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision . . . .

ORS 659A.203(1)(b)(A)-(B).

ORS 659A.200 defines the term "employee" as meaning:

> [A] person employed by or under contract with . . . (a) The state or any agency of or political subdivision in the state; (b) Any person authorized to act on behalf of the state, or agency of the state or subdivision in the state, with respect to control, management or supervision of any employee; (c) Employees of the public corporation created under ORS 656.751; (d) Employees of a contractor who performs services for the state, agency or subdivision, other than employees of a contractor under contract to construct a public improvement; and (e) Any person authorized by contract to act on behalf of the state, agency or subdivision.

ORS 659A.200(2)(a)-(e).

Pursuant to ORS 659A.200, the term "public employer" means "(a) [t]he state or any agency of or political subdivision in the state; and (b) [a]ny person authorized to act on behalf of the state, or any agency of or political subdivision in the state, with respect to control, management or supervision of any employee."  ORS 659A.200(3)(a)-(b).

The plain language of Oregon's statutory scheme simply does not support the proposition that a plaintiff may bring a whistleblowing claim against an "employer" which never actually employed, controlled, managed, or supervised the plaintiff.  Plaintiff's own interpretation of the statutes, by itself, is simply insufficient to support such a broad construction.  In fact, Plaintiff does not cite any case or legislative history supporting her interpretation of ORS 659A.199 or 659A.203.  Furthermore, I do not find a single case where a plaintiff was allowed to bring a claim under ORS 659A.199 or 659A.203 against an entity which never employed, controlled, managed, or supervised the plaintiff, let alone where an entity which never employed, controlled, managed, or supervised the plaintiff was found liable under ORS 659A.199 or 659A.203.  Plaintiff does not respond in any way as to how Lansing may be liable under ORS 659A.199 or 659A.203.

Based on the above, Defendants' motion to dismiss Plaintiff's third and fourth claims for relief is granted.

19 - OPINION & ORDER

/ / /

**II. The County's Motion to Dismiss**

    **A. First and Second Claims for Relief**

    Plaintiff's first and second claims for relief allege that the County violated Plaintiff's First Amendment right to free speech pursuant to § 1983. A municipality is considered a "person" under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A municipality, however, "cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694; see also Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992) ("[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability") (Citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988)).

    There are three ways of proving the existence of a municipal policy or custom: (1) "[s]howing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." Ulrich v.

City and Cnty. S.F., 308 F.3d 968, 984-85 (9th Cir. 2002) (quotation marks and citations omitted).

The County contends that Plaintiff's first and second claims for relief do not allege facts sufficient to support her claims.  Specifically, the County argues that Plaintiff's first and second claims for relief fail to identify a specific County officer or employee with policy-making powers.[8]  Plaintiff responds that it would be improperly "onerous" to require a plaintiff, such as herself, to identify "by name at the pleading stage specific person or persons." Id.  In the alternative, Plaintiff asserts she intends to submit a First Amended Complaint that will "identify at least one Marion County policymaker and a number of actions that satisfy [her] . . . theories." Id., p. 5.  Plaintiff asserts that the prospective First Amended Complaint will allege that "an official or officials of the [Marion County Children and Families Department] was either an official responsible for final policy making, an official policymaker to whom policy making authority was delegated, or an official whose decisions and actions were ratified by Marion County." Id., p. 4.  Plaintiff further asserts that the First Amended Complaint will specifically allege that Allison Kelley ("Kelley"), the Director of the Marion County Children and Families Department, "was an official responsible for final policy making, an official policymaker to whom policy making authority was delegated, or an official whose decisions and actions were ratified by the Board of Commissioners" and that Kelley, "together with other members of the Department, took action to directly or indirectly . . . chill [Plaintiff's] advocacy with members of the Oregon legislature in violation of [her] constitutional rights." Id., p. 5.

---

[8] Plaintiff concedes that her alleged violation of her constitutional right to free speech is not premised on the first theory of municipal liability–that the municipal policy or custom existed as a result of a longstanding practice or custom. Resp., p. 4.  Instead, she contends that the County violated her constitutional right to free speech under the second and third theories of municipal liability.

Despite Plaintiff's stated intent to file an amended complaint, all that is before me now are the allegations in Plaintiff's current, operative Complaint.  Even when assuming the factual allegations in the Complaint as true, they fail to allege facts sufficient to support Plaintiff's claims of municipal liability.  The Ninth Circuit makes clear that for Plaintiff to establish municipal liability pursuant to § 1983, she must "establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy" or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  Gillette, 979 F.2d at 1346-47 (internal quotation marks and citations omitted).  The Complaint fails to identify or even allege that any official with final policy-making authority committed the constitutional tort or ratified a subordinate's unconstitutional decision or action.  Accordingly, the Complaint–as it stands before me–does not state a claim for relief under the theories of municipal liability asserted by Plaintiff.  The County's motion to dismiss Plaintiff's first and second claims for relief is granted.

### B. Third Claim for Relief

Plaintiff concedes that her third claim for relief brought pursuant to ORS 659A.199 fails to state a claim against the County.  Resp., p. 4.  I agree with Plaintiff and accordingly, the County's motion to dismiss Plaintiff's third claim for relief is granted.

### C. Fourth Claim for Relief

Plaintiff's fourth claim for relief alleges Plaintiff violated ORS 659A.203.  Plaintiff makes the same arguments posed in her response to the Partial Motion to Dismiss filed by OCCF and Lansing: that ORS 659A.203 does not require defendants to have actually employed Plaintiff

and that all Plaintiff needs to allege is that CASA, the entity which employed her, was under a

contractual relationship with the County and that the County retaliated against her.

Discussed above, Plaintiff's interpretation of ORS 659A.203 lacks merit and is

unsupported by any authority. Accordingly, the County's motion to dismiss Plaintiff's fourth

claim for relief is granted.

## CONCLUSION

Based on the reasons above, Defendants' Partial Motion to Dismiss (doc. #10) is

GRANTED and the County's Motion to Dismiss (doc. #15) is GRANTED. Oral argument is

unnecessary.

IT IS SO ORDERED.

Dated this ___13___ day of ___Aug.___, 2012.

_____
MARCO A. HERNANDEZ
United States District Judge